**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DEBORAH LAUFER, Individually,

                              Plaintiff,                    1:19-CV-1501 (BKS/ML)

v.

LAXMI & SONS, LLC

                              Defendant.
_____

**Hon. Brenda K. Sannes, United States District Court Judge:**

**ORDER**

        Plaintiff Deborah Laufer, a Florida resident and an individual with a disability, filed this

action asserting causes of action under Title III of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12181, et seq. and the New York State Human Rights Law ("NYSHRL"), N.Y.

Exec. Law § 296(2)(a). (Dkt. No. 1). Plaintiff seeks injunctive and declaratory relief, damages,

and attorney's fees. (*Id.*). Plaintiff has filed approximately 60 nearly identical cases against

different defendants in the Northern District of New York, approximately 20 of which remain

open and assigned to this Court. On May 6, 2020, the Court issued an order in this case, which

was subsequently filed in all of Plaintiff's cases that were open at the time and have since been

opened, requiring Plaintiff to submit briefing explaining why the complaint should not be

dismissed for lack of subject matter jurisdiction, given questions the Court raised regarding

whether the complaint sufficiently alleged standing. (Dkt. No. 15).

        In one of Plaintiff's open cases, *Laufer v. Dove Hess Holdings, LLC*, No. 20-cv-00379,

after the parties fully briefed the standing questions raised by the Court, (No. 20-cv-00379, Dkt.

Nos. 7, 11, 17), Plaintiff filed a motion to amend her complaint, seeking to add new standing-

related allegations, (No. 20-cv-00379, Dkt. No. 26). After the parties fully briefed the motion to amend, (No. 20-cv-00379, Dkt. Nos. 26, 32), the Court issued a decision finding that neither Plaintiff's original complaint nor her amended complaint sufficiently alleged standing and denying her motion to amend as futile, but granting her an opportunity to seek to further amend the complaint to cure the deficiencies the Court identified. A copy of the Court's decision in that case (the "Dove Hess Decision") is attached hereto as **Exhibit A**. As the standing issues in Plaintiff's other open cases are virtually identical to those resolved by the Court in the Dove Hess Decision, the Court now enters this order to determine the status of each of those cases in light of the Dove Hess Decision.

In 7 of Plaintiff's open cases, (Nos. 19-cv-01432, 19-cv-01509, 19-cv-01557, 19-cv-01564, 19-cv-01585, 20-cv-00273, and 19-cv-01501[1]), Plaintiff has obtained a clerk's entry of default and filed a motion for default judgment. The complaints on which Plaintiff seeks default judgment in these matters are virtually identical to her original complaint in *Laufer v. Dove Hess Holdings, LLC*, which the Court found failed to allege standing, and Plaintiff has not sought to add any additional standing-related allegations to these complaints. Therefore, in each of these cases, Plaintiff's complaint is dismissed without prejudice for lack of standing, for the reasons

---

[1] In its order in Case No. 19-cv-01501 directing Plaintiff to brief the standing issues, the Court also raised the question of whether the case was moot based on apparent changes to the defendant's website since the filing of the complaint. (No. 19-cv-01501, Dkt. No. 15, at 8-9). Plaintiff's brief on this issue relied heavily on out-of-circuit cases involving websites. (No. 19-cv-01501, Dkt. No. 17, at 23-28). Because the Court dismisses the complaint for lack of standing, it does not reach the mootness issue, but notes that to the extent Plaintiff wishes to amend her complaint, she should include allegations establishing that her claims are not moot under the standards set forth in *Second Circuit* law. *See, e.g., Diaz v. Kroger Co.*, No. 18-cv-7953, 2019 WL 2357531, at *3-5, 2019 U.S. Dist. LEXIS 93177, at *5-12 (S.D.N.Y. June 4, 2019) (reviewing relevant in-circuit case law, rejecting the plaintiff's proposed "sweeping, technology-specific exception to the mootness doctrine," holding that "ADA cases involving websites are subject to the same mootness standard as their 'structural' counterparts," and finding that the defendant's modifications to website to bring it into compliance "met the stringent showing required by the Supreme Court's mootness precedents").

set forth in the Dove Hess Decision. Because the Court lacks subject matter jurisdiction over these actions, Plaintiff's pending motions for default judgment are moot.

In 4 of Plaintiff's open cases (Nos. 20-cv-00281, 20-cv-00350, 20-cv-00378, and 20-cv-00383), Plaintiff has obtained a clerk's entry of default, but has not yet moved for default judgment. The complaints in these matters are virtually identical to Plaintiff's original complaint in *Laufer v. Dove Hess Holdings, LLC*, which the Court found failed to allege standing, and Plaintiff has not sought to add any additional standing-related allegations to these complaints. Therefore, in each of these cases, Plaintiff's complaint is dismissed without prejudice for lack of standing, for the reasons set forth in the Dove Hess Decision.

In 4 of Plaintiff's open cases, (Nos. 19-cv-1586[2], 20-cv-00376, 20-cv-00384, and 19-cv-01559[3]), Plaintiff has moved to amend her complaint to add additional standing-related allegations. The standing-related allegations Plaintiff seeks to add in each of these matters arevirtually identical to those she sought to add in her amended complaint in *Laufer v. Dove Hess Holdings, LLC*, except that each complaint is customized to allege Plaintiff's desire to visit attractions near each particular defendant's hotel. Therefore, for the reasons set forth in the Dove Hess Decision, in each of these cases, Plaintiff's motion to amend her complaint is denied as futile and her operative complaint is dismissed for lack of standing, without prejudice to her ability to seek leave to file an amended complaint curing the remaining standing deficiencies.

---

[2] Prior to Plaintiff's motion to amend her complaint, the defendant in Case No. 19-cv-1586 filed a letter motion asking the Court to disregard a supplemental declaration that Plaintiff attached to her reply brief on the standing issue. (Dkt. No. 27). That motion is moot in light of Plaintiff's subsequent motion to amend, which sought to add allegations substantially similar to those in her supplemental declaration, and which the Court has found failed to allege standing.

[3] On November 17, 2020, the defendant in Case No. 19-cv-01559 filed a motion seeking an order "granting summary judgment pursuant to Federal Rule of Civil Procedure 56, or . . . dismissing the complaint for failure to join indispensable parties pursuant to Fed. R. Civ. P. 19 and denying the motion to amend the complaint." (No. 19-cv-01559, Dkt. No. 31, at 1). Because the Court denies Plaintiff's motion to amend and Plaintiff's pending complaint fails to establish standing, the Court does not have subject matter jurisdiction to address the defendant's motion for summary judgment.

In 4 of Plaintiff's open cases, (Nos. 20-cv-00845[4], 20-cv-00357[5], 19-cv-01581[6], and 20-cv-01075[7]), Plaintiff has sought to amend her complaint "as of right" pursuant to Fed. R. Civ. P. 15. The standing-related allegations Plaintiff seeks to add in each of these matters is virtually identical to those she sought to add in her amended complaint in *Laufer v. Dove Hess Holdings, LLC*, except that each complaint is customized to allege Plaintiff's desire to visit attractions near each particular defendant's hotel. Therefore, for the reasons set forth in the Dove Hess Decision, in each of these cases, Plaintiff's amended complaint is dismissed without prejudice for lack of standing.[8]

Finally, as to Case No. 20-cv-00379, in which the Court has already denied Plaintiff's motion to amend her complaint through its ruling in the Dove Hess Decision, this order clarifies that, as with all of Plaintiff's other open cases, Plaintiff's operative complaint in that matter will be dismissed without prejudice, and the case will be closed if Plaintiff does not seek leave to file a further amended complaint within 30 days from the date of this order.

For these reasons, it is hereby

---

[4] In Case No. 20-cv-00845, the Court approved a stipulation between the parties dismissing defendant Adirondack Lakeview, LLC as a defendant and authorizing the filing of an amended complaint adding defendant The Fort William Henry Corporation, which also added new standing allegations. (No. 20-cv-00845, Dkt. No. 18). The Court made clear, however, that "it has not yet ruled on the question of whether the Plaintiff has standing in this action," and that the stipulation it approved "does not address the question of whether the amendment would be futile in light of the standing issue pending before the Court." (No. 20-cv-00845, Dkt. No. 20).

[5] Prior to Plaintiff's motion to amend her complaint, the defendant in Case No. 20-cv-00357 filed a letter motion asking the Court to disregard a supplemental declaration that Plaintiff attached to her reply brief on the standing issue. (Dkt. No. 16). That motion is moot in light of Plaintiff's subsequent amended complaint, which sought to add allegations substantially similar to those in her supplemental declaration, and which the Court has found failed to allege standing.

[6] The defendant in Case No. 19-cv-01581 has filed a motion to strike Plaintiff's proposed amended complaint. (No. 19-cv-01581, Dkt. No. 30). Because Plaintiff's amended complaint is dismissed for lack of standing, the motion is moot.

[7] On November 18, 2020, Plaintiff filed a joint letter motion in Case No. 20-cv-01075 stating that the parties "have reached a settlement in this action" and "seeking a stay of all court proceedings in this matter . . . through December 18, 2020, while the settlement agreement is consummated." (Dkt. No. 12). Because the Court finds that Plaintiff's complaint in Case No. 20-cv-01075 must be dismissed for lack of standing, the letter motion is moot.

[8] Because the Court dismisses Plaintiff's proposed amended complaints in these cases for lack of subject matter jurisdiction, it does not address whether Plaintiff's attempts to amend her complaints "as of right" in these matters were proper under Fed. R. Civ. P. 15.

**ORDERED** that the Clerk of the Court is directed to file this Order in each of the cases identified in Exhibit B to this Order; and it is further

**ORDERED** that Plaintiff has failed to establish standing in, and the Court therefore lacks subject matter jurisdiction to adjudicate, the following actions: Case Nos. 19-cv-01432, 19-cv-01509, 19-cv-01557, 19-cv-01564, 19-cv-01585, 20-cv-00273, 19-cv-01501, 20-cv-00281, 20-cv-00350, 20-cv-00378, 20-cv-00383, 20-cv-00845, 20-cv-00357, 19-cv-1586, 20-cv-00376, 20-cv-00384, 19-cv-01559, 19-cv-01581, 20-cv-01075, and 20-cv-00379; and it is further

**ORDERED** that Plaintiff's operative complaints in Case Nos. 19-cv-01432 (Dkt. No. 7), 19-cv-01509 (Dkt. No. 1), 19-cv-01557 (Dkt. No. 1), 19-cv-01564 (Dkt. No. 1), 19-cv-01585 (Dkt. No. 1), 20-cv-00273 (Dkt. No. 1), 19-cv-01501 (Dkt. No. 1), 20-cv-00281 (Dkt. No. 1), 20-cv-00350 (Dkt. No. 11), 20-cv-00378 (Dkt. No. 1), 20-cv-00383 (Dkt. No. 1), 20-cv-00845 (Dkt. No. 19), 20-cv-00357 (Dkt. No. 21), 19-cv-01581 (Dkt. No. 28), 20-cv-01075 (Dkt. No. 6), and 20-cv-00379 (Dkt. No. 1) are **DISMISSED without prejudice** for lack of standing; and it is further

**ORDERED** that Plaintiff's motions to amend her complaint in Case Nos. 19-cv-1586 (Dkt. No. 32), 20-cv-00376 (Dkt. No. 22), 20-cv-00384 (Dkt. No. 20), and 19-cv-01559 (Dkt Nos. 29, 30) are **DENIED as futile** for lack of standing, and the operative complaints in Case Nos. 19-cv-1586 (Dkt. No. 1), 20-cv-00376 (Dkt. No. 1), 20-cv-00384 (Dkt. No. 1) and 19-cv-01559 (Dkt. No. 1) are **DISMISSED without prejudice** for lack of standing; and it is further

**ORDERED** that the following motions are moot: Plaintiff's motions for default judgment in Case Nos. 19-cv-01432 (Dkt. No. 22), 19-cv-01509 (Dkt. No. 12), 19-cv-01557 (Dkt. No. 20), 19-cv-01564 (Dkt. No. 11), 19-cv-01585 (Dkt. No. 12), 20-cv-00273 (Dkt. No. 13), and 19-cv-01501 (Dkt. No. 13); Defendant's motion to dismiss or for summary judgment in

Case No. 19-cv-01559 (Dkt. No. 31); Defendant's motion to strike Plaintiff's amended complaint in Case No. 19-cv-01581 (Dkt. No. 30); Plaintiff's letter motion seeking a "stay of all court proceedings in this matter . . . through December 18, 2020 while the settlement agreement is consummated" in Case No. 20-cv-01075 (Dkt. No. 12); and Defendant's motion to disregard Plaintiff's supplemental declaration in Case Nos. 19-cv-1586 (Dkt. No. 27) and 20-cv-00357 (Dkt. No. 16); and it is further

**ORDERED** that to the extent Plaintiff wishes to file a motion in any of the foregoing matters seeking leave to file an amended complaint addressing the standing deficiencies identified in the Dove Hess Decision, she may do so by no later than 30 days from the date of this order; and it is further

**ORDERED** that, should Plaintiff do so in any of the foregoing matters, she also may, but is not required to, submit a letter brief no later than 30 days from the date of this order explaining her position on the most appropriate path forward assuming her further amended complaint survives dismissal, particularly with respect to the questions raised in Section IV.B.7 of the Dove Hess Decision; and it is further

**ORDERED** that, within the time permitted by the Federal and Local Rules for an opposition to Plaintiff's motion to further amend, the defendants in each of the foregoing matters may, but are not required to, submit such an opposition and/or a letter brief explaining their own views on the most appropriate path forward assuming Plaintiff's further amended Complaint survives dismissal; and it is further

**ORDERED** that if Plaintiff does not file a motion seeking leave to file an amended complaint in the above-referenced cases within 30 days from the date of this order, the Court Clerk is directed to close the cases.

**IT IS SO ORDERED.**

Dated: November 19, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

<u>**EXHIBIT A**</u>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEBORAH LAUFER, Individually,

                              Plaintiff,              5:20-cv-00379 (BKS/ML)

v.

DOVE HESS HOLDINGS, LLC

                              Defendant.

**Appearances:**

*For Plaintiff:*
Peter Sverd
Law Offices of Peter Sverd, PLLC
225 Broadway
Suite 613
New York, NY 10007

*For Defendant:*
Robert J. Thorpe
Anneliese Aliasso
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        On April 1, 2020, Plaintiff Deborah Laufer, a Florida resident and an individual with a

disability, filed this action against Defendant Dove Hess Holdings, LLC, asserting causes of

action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq.

and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(2)(a). (Dkt.

No. 1). Plaintiff seeks injunctive and declaratory relief, damages, and attorney's fees. (*Id.*).
Plaintiff has filed approximately 60 nearly identical cases against different defendants in the
Northern District of New York, approximately 20 of which remain open and assigned to this
Court.

On May 7, 2020, the Court issued an order in this case and all of Plaintiff's then-open
cases requiring Plaintiff to submit briefing "explaining why the complaint should not be
dismissed for lack of subject matter jurisdiction," given the "serious question as to whether
Plaintiff has established standing." (Dkt. No. 4, at 2). Plaintiff submitted such a brief, (Dkt. No.
7), and Defendant submitted an opposition. (Dkt. No. 11). With the Court's leave, Plaintiff filed
a reply to Defendant's brief along with a supplemental declaration, alleging additional facts that
were not in the Complaint. (Dkt. No. 17, at 23-27). Plaintiff maintained that the declaration was
included "out of an abundance of caution" in response to Defendant's arguments, and that the
new facts were "entirely unnecessary" to establish standing. (Dkt. No. 17, at 5, 17). Defendant
filed a letter motion requesting that the Court disregard the supplemental declaration, and
Plaintiff submitted a response. (Dkt. Nos. 19, 20).

Then, on September 24, 2020, before the Court decided the standing question, Plaintiff
moved to amend her Complaint to add allegations substantially similar to those that she had
included in her supplemental declaration. (Dkt. No. 26). Defendant opposed Plaintiff's motion to
amend. (Dkt. No. 32). Both parties have also filed notices of supplemental authority alerting the
Court to recent relevant case law, (Dkt. Nos. 27, 28, 30), and Plaintiff has filed response briefs
explaining why she believes the supplemental authorities Defendant relies on are inapposite.
(Dkt. Nos. 29, 31). Plaintiff's motion to amend her Complaint, as well as the parties' briefing on
the standing question, are now before the Court.

2

## II.    FACTS[1]

Plaintiff is a resident of Florida who is "bound to ambulate in a wheelchair or with a cane or other support," "has limited use of her hands," and is "vision impaired." (Dkt. No. 26-2, at ¶ 1). Plaintiff alleges that, "beyond the comfort of her own home, [she] must primarily rely on a wheelchair" to ambulate, and that she requires accessible handicap parking spaces located closest to the entrances of a facility. (*Id.*). Among other accommodations, Plaintiff requires access aisles and doorways with "sufficient width," safe "[r]outes connecting the handicap spaces" to the rest of the facility, sinks "at the proper height," and "grab bars both behind and beside a commode so that she can safely transfer." (*Id.*). Plaintiff is an "advocate of the rights of similarly situated disabled persons and is a 'tester' for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." (*Id.* ¶ 2).

Defendant owns the Skaneateles Inn On 20 in Auburn, New York (the "Property"). (*Id.* ¶ 3). Defendant, "either by themselves or by and through a third party, implemented, operates, controls and or maintains an online reservation system" (the "ORS") where the public may reserve accommodations and review information pertaining to the Property. (*Id.* ¶ 12). "Prior to the commencement of this lawsuit, Plaintiff visited the ORS for the purpose of reviewing and assessing the accessible features at the Property and ascertain[ing] whether it meets the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs." (*Id.* ¶ 13). Plaintiff alleges that Defendant must comply with this regulation, which imposes requirements "to ensure

---

[1] The facts set forth herein are taken from Plaintiff's proposed amended complaint (the "Amended Complaint"), (Dkt. No. 26-2), which, with the exception of the new allegations discussed herein, is substantively identical to Plaintiff's original Complaint, (Dkt. No. 1).

that [places of lodging] are accessible to disabled individuals." (*Id.* ¶¶ 9-10) (citing 28 C.F.R. §
36.302(e)(1)).

According to the Amended Complaint, Defendant failed to comply with the requirements
of 28 C.F.R. § 36.302(e). (*Id.* ¶ 13). Specifically, https://www.skaneatelesinn.com/ has "[n]o
information" as to "whether or where the hotel offers compliant/accessible roll-in showers, tubs,
built in seating, commodes, sinks, wrapped pipes, sink and door hardware, properly located
amenities, sufficient maneuvering spaces, compliant doors, furniture, controls and operating
mechanisms . . . whether all goods, facilities and services at the property are connected by a
compliant accessible route . . . the accessibility of routes connecting all the features of the hotel,
the transaction counter, parking, and common area restrooms . . . whether accessible rooms are
on the ground floor or if an elevator is provided within an accessible route . . . [whether] the
pool/pools hav[e] an accessible lift . . . [or] whether any or all of the[] hotel features [such as a
swimming pool, picnic area, etc.] are accessible." (*Id.* ¶ 13(a)). Booking sites run by third parties
are similarly unhelpful in finding this information: four of the third-party sites had "no option to
book an accessible room," provided "no information" about accessibility in the hotel other than
statements such as "Wheelchair-accessible parking" or "Accessible parking," (*id.* ¶ 13(b)-(d),
(f)), and the fifth, which also had "no option to book a room labeled as accessible," included a
reference to one room labeled "Double Room" with the statement "Toilet with grab rails" listed
in the description, but otherwise provided no accessibility information, (*id.* ¶ 13(e)).

"In the near future, Plaintiff intends to revisit Defendant's ORS in order to test it for
compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room
and otherwise avail herself" of the facilities and accommodations of the Property. (*Id.* ¶ 14).
Plaintiff "is continuously aware" that the ORS "remains non-compliant and that it would be a

futile gesture to revisit it as long as those violations exist unless she is willing to suffer additional discrimination." (*Id.* ¶ 15). Plaintiff has alleged that Defendant's discriminatory ORS contributes to her "sense of isolation and segregation" and that she has "frustration and humiliation as the result." (*Id.* ¶ 16). She further alleges that Defendant's ADA violations "infringe Plaintiff's right to travel free of discrimination" and deprived her of "the information required to make meaningful choices for travel" by making it "more difficult to book a room at the hotel or make an informed decision as to whether the facilities at the hotel are accessible." (*Id.*).

Plaintiff's original Complaint relied solely on her status as an ADA "tester." It did not contain any allegations that she ever actually intended to visit Auburn or book a room at the Property, nor did it contain any specific details about when and how often she intends to go back and "test" Defendant's ORS for ADA compliance. However, in her motion to amend, Plaintiff seeks to add the following more specific allegations regarding both of these points:

> Plaintiff has a system of rechecking the online reservations systems of each and every hotel she has sued. In this regard, she maintains a list of every hotel she has sued, and records the dates she visits their reservations systems. Pursuant to that system, she visited the websites for Defendant's hotel multiple times prior to filing the instant lawsuit, including one time on November 21, 2019. In every case, once the complaint is filed, she also marks a date for the near future to revisit the hotel's system. Once it is established when the hotel's system is required to become compliant, whether by settlement agreement or court order, the plaintiff records the date. She then revisits the hotel's system when that date arrives. By this system, Plaintiff revisits the websites for every hotel she sues at least two times after the complaint is filed.

> Plaintiff has family in New York and travels to the State to visit them frequently. She also has traveled extensively throughout the State. When she visits, she stays in hotels. She plans to return to the State and to travel to all the regions of the State as soon as the Covid crisis is over and will return again in the subsequent future consistent with her frequent visits to the area. Sites and Attractions that the Plaintiff will further explore in the future includes the Skaneateles Lake, Skaneateles Village, and the Montezuma National Wildlife Refuge, all of which are located in the vicinity of the Defendant's hotel. Plaintiff needs Defendant's hotel reservations system to be compliant so that she can compare hotels and ascertain whether or not their features and rooms are accessible to her. Unless and until Defendant's hotel's system becomes compliant, Plaintiff is

deprived the ability to make a meaningful choice in making her upcoming travel plans
and stay in the area.

(*Id.* ¶¶ 6-7).[2]

Based on the foregoing facts, Plaintiff alleges that Defendant has deprived her of the
enjoyment of accommodations available to the general public, and that she "has suffered and will
continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the
Defendant is compelled to modify" its ORS. (Dkt. No. 26-2, at ¶¶ 16-17). Plaintiff alleges that
Defendant has violated the ADA (Count I) and the NYSHRL (Count II). (*Id.* at 1-11). Plaintiff
seeks: declaratory relief under the ADA and the NYSHRL; injunctive relief directing Defendant
to comply with 28 C.F.R. § 36.302(e); attorney's fees, costs and litigation expenses under 42
U.S.C. § 12205; and compensatory damages under N.Y. Exec. Law § 297(9). (*Id.* at 10-11).

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading "with the opposing
party's written consent or the court's leave. The court should freely give leave when justice so
requires." In the Second Circuit, "leave to amend should be given 'absent evidence of undue
delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing
party, or futility.'" *Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) (quoting *Monahan v.
N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000)).

## IV.    ANALYSIS

### A.    Undue Delay, Bad Faith, Prejudice

As a preliminary matter, the Court rejects Defendant's arguments that the Court should
deny Plaintiff lead to amend based on undue delay, bad faith, or prejudice. (Dkt. No. 32, at 10-

---

[2] These new allegations largely track facts that Plaintiff first raised in her declaration attached to her reply to
Defendant's brief contesting her standing. (Dkt. No. 17, at 25-27).

11). Here, the delay between the filing of the Complaint and the motion to amend spans approximately five months. Courts in this Circuit have found much longer delays to be insufficient to warrant denial of leave to amend absent bad faith or undue prejudice. *See NRA of Am. v. Cuomo*, No. 20-cv-385, 2020 WL 4732110, at *5, 2020 U.S. Dist. LEXIS 146279, at *12 (N.D.N.Y. Aug. 14, 2020) (citing cases finding delays of more than a year to be insufficient to deny leave to amend in the absence of bad faith or prejudice).

Furthermore, the record contains no evidence of bad faith on Plaintiff's part. Defendant criticizes Plaintiff's decision to amend her Complaint only after receiving Defendant's briefing and learning of an unfavorable decision in another court. (Dkt. No. 32, at 10-11). However, Defendant points to no authority suggesting that, at this early stage, Plaintiff's actions evidence "bad faith" under the circumstances of this case. Moreover, the "Second Circuit has . . . cautioned district courts against denying motions to amend simply because a plaintiff was previously put on notice of the deficiencies in the complaint and given a chance to remedy those deficiencies." *Telesco v. Neuman*, No. 14-cv-3480, 2015 WL 5474230, at *3, 2015 U.S. Dist. LEXIS 129107, at *6 (S.D.N.Y. Sept. 8, 2015) (citing *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). The Court therefore finds no bad faith in Plaintiff's choice to initially defend her Complaint and, after receiving the Court's order on the issue of standing, briefing from defendants here and in related litigation, and unfavorable decisions by other courts, to change her strategy and attempt to cure her Complaint's perceived deficiencies. Furthermore, given the early stage of the litigation and the fact that discovery has not yet commenced, the only "prejudice" to Defendant from granting leave to amend is the legal fees and costs associated with extra briefing, which, as Defendant acknowledges, is insufficient. (*Id.*

at 11).[3]

### B.    Futility

Having considered the issues of delay, bad faith, and prejudice, the remaining question is whether Plaintiff's proposed amendments would be futile. "A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). "An amendment is also futile where the Court would lack jurisdiction to determine the proposed claim." *Schmidt v. Stone*, No. 14-cv-2519, 2018 WL 4522082, at *6, 2018 U.S. Dist. LEXIS 15048, at *17 (E.D.N.Y. Jan. 29, 2018) (citing Fed. R. Civ. P. 12(b)(1)), *report and recommendation adopted* 2018 U.S. Dist. LEXIS 44917 (E.D.N.Y. Mar. 16, 2018). "The court applies the same standard as that for a motion to dismiss under Rule 12(b)(6) [or 12(b)(1)] when deciding whether to grant leave to amend." *Id.* at *6, 2018 U.S. Dist. LEXIS 15048, at *17 (alteration in original) (citing *Konrad v. Epley*, No. 12-cv-4021, 2013 WL 6200009, at *20, 2013 U.S. Dist. LEXIS 169091 (E.D.N.Y. Nov. 25, 2013)).

Defendant's only arguments as to futility relate to its contention that, even with its new allegations, the Amended Complaint fails to allege standing. (Dkt. No. 32, at 5-9).[4] Thus, the Court must consider whether the Amended Complaint sufficiently alleges standing. In deciding this question, the Court will consider the arguments raised in the parties' initial standing briefing

---

[3] Defendant also argues that allowing Plaintiff to amend her Complaint would be prejudicial because it would "necessarily delay the Court's pending inquiry into Plaintiff's standing and, as a result, it would unnecessarily delay this matter even further." (Dkt. No. 32, at 11). Because, as discussed below, the Court evaluates Plaintiff's standing now in the context of deciding whether her proposed amendment is futile, Defendant's concern about unnecessary delay is moot.

[4] Defendant does not, for example, argue that, even if Plaintiff's Amended Complaint sufficiently alleges standing, Plaintiff's proposed amendments are futile because the Amended Complaint fails to state a claim upon which relief can be granted, and therefore could not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

and in their subsequent briefing on the motion to amend. (Dkt. Nos. 7, 11, 17, 26, 32).

The standing question before the Court concerns the Court's subject matter jurisdiction. A challenge to subject matter jurisdiction, including for lack of standing, may be facial or fact-based. *Carter v. HealthPort Techs.*, 822 F.3d 47, 56 (2d Cir. 2016). When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). For purposes of a facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction. *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In contrast, to support a fact-based challenge, a defendant may proffer evidence beyond the pleadings. *Id.* (citing *Amidax*, 671 F.3d at 145). To oppose such a motion, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" with respect to jurisdiction. *Id.* (quoting *Exchange Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

Here, Defendant's challenges to Plaintiff's standing are facial, not fact-based, as they focus on attacking the sufficiency of Plaintiff's allegations and do not rely on evidence outside the pleadings.[5] (Dkt. Nos. 11, 32). Defendant's request that the Court "take judicial notice of the approximately [500][6] lawsuits commenced by Plaintiff since October 2019," (Dkt. No. 11, at 12

---

[5] While *Plaintiff* sought to introduce a supplemental declaration with her initial reply to Defendant's standing brief, (Dkt. No. 17), Plaintiff's motion to amend seeks to add the relevant facts from the declaration as allegations in the Amended Complaint, (Dkt. No. 26), mooting any need for the Court to decide whether to consider that declaration. Given that, Defendant's letter motion requesting that the Court disregard that declaration, (Dkt. No. 19), is denied as moot.

[6] Defendant's initial brief, filed in June 2020, noted that, since October 2019, Plaintiff had filed "nearly 300 lawsuits in at least nine (9) different states—including more than 115 lawsuits in New York." (Dkt. No. 11, at 12). Defendant's opposition to Plaintiff's motion to amend, filed in September 2020, updates these numbers, stating that

n. 6; *see also* Dkt. No. 32, at 7-8 & n.2), does not create a fact-based challenge, since documents of which the Court may take judicial notice may be considered in the context of a facial challenge. *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 214 (2d Cir. 2020). As such, the Court will evaluate the question of Plaintiff's standing under the standard for facial challenges, accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor.

### 1.      Standing

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.' To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit.'" *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533-34 (2d Cir. 2020) (quoting *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018)). To establish standing a plaintiff must demonstrate (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complaint of," and (3) redressability of the injury by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). Where "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). To be "concrete" an injury "must actually exist": the injury must be "real" and not "abstract." *Id.* Generally, "even in the

---

Plaintiff has filed "500 lawsuits in at least fifteen (15) states within the last year, including more than 140 lawsuits in New York district courts." (Dkt. No. 32, at 7).

context of a statutory violation," "a bare procedural violation, divorced from any concrete harm,"
does not satisfy the injury-in-fact requirement of Article III. *Id.* at 1549. However, a "violation of
a procedural right granted by statute" that poses a "risk of real harm" may "satisfy the
requirement of concreteness." *Id.* Thus, "the critical question for standing purposes is 'whether
the particular . . . violations alleged . . . entail a *degree of risk* sufficient to meet the concreteness
requirement.'" *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80 (2d Cir. 2017)
(quoting *Spokeo*, 136 S. Ct. at 1550).

To have standing to seek injunctive relief, Plaintiff has the additional burden of
establishing that she "has sustained or is immediately in danger of sustaining some direct injury
as the result of the challenged . . . conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02
(1983) (internal quotation marks and citation omitted); *see Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184, 187 (2d Cir. 2013) ("Plaintiffs seeking injunctive relief must also prove that the
identified injury in fact presents a 'real and immediate threat of repeated injury.'" (quoting *Shain
v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).

Applying the foregoing principles in the ADA context, the Second Circuit has previously
found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable
to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer,
based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to
plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler*, 731 F.3d at
187-88. Whether an ADA plaintiff intends to return to a place of public accommodation is a fact-
specific inquiry. *See, e.g.*, *id.* (finding the plaintiff had standing to challenge a diner's wheelchair
inaccessible entrance and barriers inside where the plaintiff alleged that the seven-to-eight-inch
step at the front entrance "deterred him from frequenting the Diner; the Diner has not indicated

11

an intent to remedy this barrier; and [the plaintiff's] testimony and proximity to the Diner create

a reasonable inference that he would frequent the Diner were the violation remedied").

### 2.      The Parties' Arguments

Plaintiff brings suit under 42 U.S.C. § 12182(a), which provides: "No individual shall be

discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." The "discrimination" Plaintiff alleges is the failure of the ORS to comply with

the requirements set forth in one of the ADA's implementing regulations, 28 C.F.R. §

36.302(e)(1).[7] Plaintiff argues that since the ADA violations she alleges relate to the ORS rather

than Defendant's physical property, she need only allege a past injury from, and intent to return

to, the ORS; she need not allege that she ever had, or has in the future, an intent to actually book

a room at Defendant's property. (Dkt. No. 7, at 14-23; Dkt. No. 26-5, at 16-25).

Plaintiff further argues that, by their plain language, neither 42 U.S.C. § 12182(a) nor 28

C.F.R. § 36.302(e)(1) limit standing to "clients or customers" of the public accommodation, as

---

[7] 28 C.F.R. § 36.302(e)(1) provides:
 **(1)** *Reservations made by places of lodging.* A public accommodation that owns, leases (or leases to), or operates
 a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or
 through a third party -
  **(i)** Modify its policies, practices, or procedures to ensure that individuals with disabilities can make
  reservations for accessible guest rooms during the same hours and in the same manner as individuals who do
  not need accessible rooms;
  **(ii)** Identify and describe accessible features in the hotels and guest rooms offered through its reservations
  service in enough detail to reasonably permit individuals with disabilities to assess independently whether a
  given hotel or guest room meets his or her accessibility needs;
  **(iii)** Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest
  rooms of that type have been rented and the accessible room requested is the only remaining room of that
  type;
  **(iv)** Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest
  rooms requested are blocked and removed from all reservations systems; and
  **(v)** Guarantee that the specific accessible guest room reserved through its reservations service is held for the
  reserving customer, regardless of whether a specific room is held in response to reservations made by others.

other parts of the ADA do.[8] (Dkt. No. 7, at 17-23; Dkt. No. 26-5, at 19-25); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679 (2001) (declining to definitively resolve whether the "clients or customers" limitation should be read to apply to Title III as a whole, but observing that this limitation "is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals").[9] Plaintiff therefore argues that, regardless of her motivation for visiting the ORS, her encounter with the ORS's failure to comply with the ADA and its regulations constitutes an injury created by statute, which the Supreme Court has recognized can constitute an injury-in-fact for Article III purposes. (Dkt. No. 7, at 17-23; Dkt. No. 17 at 17-21; Dkt. No. 26-5, at 19-25). She further argues that her allegations that she plans to revisit the ORS in the future to test it for ADA compliance create a reasonable inference that she will suffer the same injury in the future. (Dkt. No. 7, at 13-14; Dkt. No. 26-5, at 15-16).

Prior to filing her motion to amend, Plaintiff insisted that her tester status alone was sufficient to establish both an injury-in-fact and a likelihood of future injury, and that any allegations regarding her intent to visit Defendant's physical property would be mere "window dressing" and "entirely unnecessary" to the Court's analysis. (Dkt. No. 7, at 6-7; Dkt. No. 17, at 17). However, in her Amended Complaint, Plaintiff does add allegations regarding her future intentions to visit the area near Defendant's hotel and her need for the information required by 28 C.F.R. § 36.302(e)(1) in order to make an informed decision as to whether to book a room there. She argues that these allegations strengthen an inference that she will visit Defendant's ORS in

---

[8] Specifically, 42 U.S.C. § 12182(b)(1)(A)(i-iv) expressly provides that only "clients or customers" of a public accommodation may sue that public accommodation with respect to three specific types of discrimination not applicable here.

[9] Plaintiff also argues that, unlike other portions of the ADA, the provisions she relies on do not "contain language imposing a physical nexus requirement." (Dkt. No. 7, at 21-22 (comparing 42 U.S.C. § 12182(b)(2)(A)(i), which prohibits "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations," with 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302(e)(1), which do not require that the challenged barriers prevent the plaintiff "from" full and equal access to goods or services)).

the future. (Dkt. No. 26-5, at 16).

Defendant argues that, without allegations actually evidencing Plaintiff's intention to use the ORS to book a room at Defendant's hotel, her complaints about the ORS's non-compliance with the ADA amount to a "bare procedural violation," and she cannot show a concrete and particularized injury or likelihood of future injury for standing purposes. (Dkt. No. 11, at 7-14). Defendant also argues that the Court should disregard Plaintiff's new allegations evidencing her intent to visit New York as "vague," "conclusory," "implausible" and a "calculated, unpersuasive attempt to survive the Court's *sua sponte* inquiry into Plaintiff's standing." (Dkt. No. 32, at 5-9).

### 3.      Tester Standing Generally

Plaintiff relies heavily on the Supreme Court's jurisprudence regarding tester standing. In *Havens Realty Corp. v. Coleman*, the Supreme Court considered the question of whether "testers," which it defined as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices," have standing to sue under Section 804(d) of the Fair Housing Act ("FHA"). 455 U.S. 363, 373 (1982). The Court observed that an injury-in-fact for purposes of Article III standing may exist "solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* (citations omitted). It found that the FHA, "which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment." *Id.* Therefore, the Court held:

> A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [FHA's] provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). Whereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, required that

14

there be a "bona fide offer" to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d).

*Id.* at 373-74.

Following *Havens*, the Supreme Court has held that a plaintiff's "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute" is, in itself, a sufficiently "concrete and particular[ized]" injury-in-fact to create Article III standing. *FEC v. Akins*, 524 U.S. 11, 21 (1998) (citing *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Following the Supreme Court's lead, the Second Circuit has also applied *Havens* to hold that, at least in some circumstances, "testers" who suffer a statutorily-recognized injury meet the "injury-in-fact" requirement for standing, regardless of their subjective motivations. *See, e.g., Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (finding that plaintiffs had standing to challenge advertisements for apartments that indicated a racial preference, even "assum[ing] that the plaintiffs were not actively looking for an apartment" and were instead "combing the newspapers looking for these ads in order to bring a section 804(c) action," because "[t]here is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by [Plaintiffs]").

More recently, however, the Supreme Court has made clear that *Havens* and its progeny should *not* be read to mean that *all* injuries recognized by statute are sufficiently "concrete and particularized" to meet the Article III injury-in-fact requirement. In *Spokeo, Inc. v. Robins,* the Court examined whether a plaintiff had standing to sue a defendant consumer reporting agency under the Fair Credit Reporting Act ("FCRA") on the ground that he "became aware" that a report about him that the agency provided to a third party "contained inaccurate information." *Spokeo*, 136 S. Ct. at 1546. The Court found that the Ninth Circuit erred by basing its finding of standing on its conclusion that the plaintiff's allegations of a violation of his own personal

15

interest in the accurate reporting of his credit information established a *particularized* injury,

without separately evaluating whether the plaintiff's claimed injury was sufficiently *concrete*. *Id.*

at 1550. The Court reasoned as follows:

> Congress' role in identifying and elevating intangible harms does not mean that a
> plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a
> person a statutory right and purports to authorize that person to sue to vindicate that right.
> Article III standing requires a concrete injury even in the context of a statutory violation.
> For that reason, Robins could not, for example, allege a bare procedural violation,
> divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III
> . . . [However,] the violation of a procedural right granted by statute can be sufficient in
> some circumstances to constitute injury in fact. In other words, a plaintiff in such a case
> need not allege any *additional* harm beyond the one Congress has identified.

*Id. at* 1549.

Here, Plaintiff, an avowed ADA tester, claims that her injuries are the type of statutorily-

recognized injuries recognized in *Havens* and its progeny, as they derive from Defendant's

alleged violation of 42 U.S.C. § 12182(a) and one of its implementing regulations, 28 C.F.R. §

36.302(e)(1). Plaintiff claims that Defendant's violations, which make it "more difficult [for

disabled individuals] to book a room at the hotel or make an informed decision as to whether the

facilities at the hotel are accessible," have caused her to suffer "frustration," "humiliation" and a

"sense of isolation and segregation," and have deprived her of information that the ADA requires

Defendant to disclose to her. (Dkt. No. 26-2, at ¶ 16). While her original Complaint lacked

allegations that she actually intended to visit the area near Defendant's property, her Amended

Complaint alleges that she has traveled throughout New York and plans to return as soon as the

Covid crisis is over; that she "needs Defendant's hotel reservations system to be compliant so

that she can compare hotels and ascertain whether or not their features and rooms are accessible

to her"; and that Defendant's ADA violations deprive her of "the ability to make a meaningful

choice in making her upcoming travel plans and stay in the area." (*Id.* ¶ 7). In light of the

foregoing precedents, the question before the Court in this case is whether these alleged past and future injuries amount to complaints of "bare procedural violations" of the ADA, or are themselves sufficiently "concrete" and "particularized" to meet the Article III standing requirements.

### 4.      Tester Standing in the ADA Context

Several Circuit courts have applied *Havens* and its progeny in the context of evaluating whether testers have standing to challenge physical barriers at places of public accommodation under Title III of the ADA. Analogizing to § 804(d) of the FHA, these courts have concluded that the plain language of 42 U.S.C. § 12182(a) provides *any* disabled individual with a "legal right to be free from discrimination on the basis of disability," and thus a tester who encounters discriminatory architectural barriers has suffered a concrete, particularized injury-in-fact "in precisely the form the statute was intended to guard against"; however, to seek injunctive relief, a plaintiff may not rely *solely* on their tester status, and must still allege specific, realistic facts supporting an inference that they intend to return to the subject property. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-37 (11th Cir. 2013) (finding that "the alleged violations of [the plaintiff's] statutory rights under Title III may constitute an injury-in-fact, even though he is a mere tester of ADA compliance," and that the plaintiff had alleged particularized facts demonstrating that he frequently visited the area near defendant's property and would likely do so again); *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (finding that a disabled tester who "has suffered an invasion of the legal interest protected by Title III" has suffered an injury-in-fact for standing purposes, "regardless of his or her motivation in encountering that" discrimination, but that "the fact that 'tester standing' exists under Title III does not displace the general requirements of standing . . . Like any

plaintiff, a tester must demonstrate that she has indeed suffered a cognizable injury in fact that will be redressed by the relief sought").

The Second Circuit has not squarely endorsed the proposition that a plaintiff who visits a public accommodation *solely* to test it for ADA compliance can demonstrate standing. However, the Second Circuit *has* made clear that a plaintiff's tester status does not necessarily *preclude* standing. In cases involving testers, as in any other ADA case, the Second Circuit has applied the fact-intensive inquiry contemplated by *Kreisler* to determine whether a plaintiff sufficiently alleged an injury-in-fact and a likelihood of future injury. *See, e.g.*, *Harty v. Greenwich Hosp. Grp., LLC,* 536 F. App'x 154, 155 (2d Cir. 2013) (finding that a tester plaintiff from Florida did not have standing to bring an ADA action against the owner of a Hampton Inn in Stamford, Connecticut where the plaintiff had only stayed overnight in Stamford once despite "dozens of trips" to visit his family in nearby Nyack, New York over the last thirty years, he had not alleged "any concrete plan to stay overnight in Stamford in the future," and his tester allegations "lack[ed] the requisite link to Stamford, Connecticut"); *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71-72 (2d Cir. 2011) (finding same tester plaintiff *did* have standing to sue the owner of a New York mall where the plaintiff alleged that he traveled to New York often to visit family and attached to his complaint a list of upcoming gun shows in New York that he planned to attend, and his likelihood of returning to the property was not "contingent upon events whose occurrence was speculative and beyond [his] control," but "depend[ed] only upon his own volition . . . the likelihood of which [found] some support in professional and family reasons"); *cf. Pincus v. Nat'l R.R. Passenger Corp.,* 581 F. App'x 88, 89 (2d Cir. 2014) (finding that a tester plaintiff had standing to challenge Rehabilitation Act violations at an Amtrak station where she alleged that she "'desires to utilize Amtrak rail stations not only to avail herself of the goods

and services available at the rail stations,' but also in the capacity of a tester 'to assure herself that Amtrak is in compliance with the Rehabilitation Act so that she and others similarly situated will have full and equal enjoyment of the property without fear of discrimination'").

Following these cases, District Courts in this Circuit have readily found standing where plaintiffs credibly allege a "dual motivation" for their past and future visits to Defendant's public accommodation, i.e., a desire to both test the property for ADA compliance *and* avail themselves of the goods and services provided. *See, e.g.*, *Panarese v. Sell It Social, LLC*, No. 19-cv-3211, 2020 WL 4506730, at *2, 2020 U.S. Dist. LEXIS 119002, at *6 (E.D.N.Y. July 2, 2020) (finding the plaintiffs had standing to challenge access barriers on the defendant's website where they alleged a "dual motivation" for visiting the website: to "serve as 'testers' for the foreseeable future" and to "genuinely . . . avail themselves of the goods and services offered on the Website"); *Brown v. McKinley Mall, LLC*, No. 15-cv-1044, 2018 WL 2289823, at *2-4, 2018 U.S. Dist. LEXIS 83477, at *5-13 (W.D.N.Y. May 17, 2018) (finding ADA tester and serial litigant had standing where he was motivated to return to the defendant's mall both as a tester *and* to avail himself of shopping and dining options when he attended nearby sporting events); *Harty v. Bull's Head Realty*, No. 11-cv-01760, 2013 WL 1131625, at *3-5, 2013 U.S. Dist. LEXIS 37193, at *9-15 (D. Conn. Mar. 18, 2013) (declining to rule on whether tester status alone is sufficient for standing, as ADA tester had otherwise pled facts sufficient to demonstrate an intent to return to the defendant's property). These courts have not resolved the question of whether a *pure* tester, *without* such a dual motivation, could meet the Article III standing requirements.[10] In any event, however, "[w]hile it is unclear whether the Second Circuit has fully

---

[10] In *Access 4 All, Inc. v. Thirty E. 30th St., LLC*, No. 04-cv-3683, 2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. Dec. 11, 2006), *report & recommendation adopted* 2007 U.S. Dist. LEXIS 67736 (S.D.N.Y. Mar. 27, 2007), a case Defendant cites, the court held that a plaintiff's "intent of verifying the Hotel's compliance with the ADA" would not, in itself, give him standing in the absence of a "dual motivation for returning to a public accommodation." *Id.* at

embraced 'tester' status . . . as a basis for Article III standing, it is clear that an ADA 'tester' must still satisfy the Article III standing prerequisites." *Feltzin v. Stone Equities, LLC*, No. 16-cv-6457, 2018 WL 1115135, at *9-12, 2018 U.S. Dist. LEXIS 22870, at *23-34 (E.D.N.Y. Feb. 8, 2018) (finding that a tester plaintiff's allegations had neither established a concrete past injury nor a plausible intent to return to the defendant's property).

### 5.      Tester Standing in the Website Context

At this time, no Circuit appears to have addressed the circumstances under which a tester may have standing to challenge a hotel ORS for violations of 28 C.F.R. § 36.302(e)(1). However, a number of Circuit courts have addressed the distinct, but related, question of whether visually impaired tester plaintiffs have standing to sue credit unions over access barriers to their websites where the plaintiffs, for reasons unrelated to the websites' alleged ADA violations, are ineligible to join the credit union. These courts have uniformly answered that question in the negative. *See Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653-57 (4th Cir. 2019) (finding that a plaintiff's asserted "informational" and "dignitary" harms were insufficiently "concrete and particularized" to constitute an injury-in-fact where the information he allegedly could not access on a credit union's website had no relevance to him, and holding that his intent to return to the website as a tester "cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow [the plaintiff] to avail himself of its services"); *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833-36 (7th Cir. 2019) (reaching similar conclusion); *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 491-95 (6th Cir. 2019) (reaching similar conclusion, and specifically rejecting the argument that the ADA's lack of a "client or customer" requirement means that an ADA plaintiff may have Article III standing

---

*31-32; (Dkt. No. 11, at 4, 8-9, 13). However, *Access 4 All* was decided before the Second Circuit cases discussed herein regarding tester standing.

to challenge the inaccessibility of a website that has no actual relevance to the particular plaintiff).

These cases are distinguishable from the present matter for the obvious reason that they are limited to "narrow" situations where a plaintiff is "barred by law from making use of defendant's services." *Griffin*, 912 F.3d at 653. Here, beyond the ADA violations Plaintiff complains of and her own volition, there is nothing barring Plaintiff from using Defendant's ORS to book a room at Defendant's property. However, the foregoing case law is nonetheless instructive, in that each of these Circuit courts relied on *Spokeo*'s requirement that a plaintiff claiming an injury derived from a statutory violation link that violation to a "concrete and particularized" harm beyond a "bare procedural violation." *Spokeo*, 136 S. Ct. at 1549-50. And based on that principle, each of these courts found that, where a tester plaintiff discovers and is offended by ADA violations on a website, but that website has no actual, specific relevance to that particular plaintiff beyond the plaintiff's desire to seek out and remedy ADA violations, no concrete and particularized injury has been alleged.

Few courts in this Circuit have addressed claims analogous to the type Plaintiff brings here. Plaintiff relies heavily on *Camancho v. Vanderbilt University*, in which the court found that a visually impaired student who was seeking information about colleges had standing to challenge a university website's incompatibility with his screen reading software, despite not having alleged an intention to visit the university's physical campus. The Court reasoned:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person. The Court

21

does not doubt that it would be plausible for Plaintiff to visit the websites of all 50
schools, if they were accessible.

*Camancho v. Vanderbilt Univ.*, No. 18-cv-10694, 2019 WL 6528974, at *11, 2019 U.S. Dist.
LEXIS 209202, at *30-31 (S.D.N.Y. Dec. 4, 2019) (record citations omitted). *Camancho*
suggests that when the barrier to access a plaintiff encounters is found on a defendant's *website*,
rather than at a defendant's *physical property*, the relevant inquiry is whether the plaintiff
suffered an injury from, and intends to return to, the *website*, not the property itself. Notably,
*Camancho* is not directly on point, as here, Plaintiff does not allege that she encountered a
barrier preventing her from accessing or viewing Defendant's ORS itself, but rather alleges that
the ORS failed to comply with ADA regulations designed to provide disabled people with the
ability to obtain information about, and book a room at, Defendant's physical property. Even
setting aside that distinction, however, *Camancho* does not suggest that, in a case such as this,
the plaintiff's intention to visit the physical property is entirely irrelevant to the standing inquiry.
To the contrary, the plaintiff in *Camancho* was not a tester, but had a genuine need to access the
university's website in order to obtain information about each university and make an informed
decision about whether to visit the physical property itself. *See id.* Therefore, as with the credit
union cases discussed above, *Camancho* reinforces the proposition that, when challenging ADA
violations on a website, a plaintiff must allege a specific and individualized reason for accessing
and using the website in order to allege a past or future injury for standing purposes.

Several other District Court cases in this Circuit, including some cited by the parties,
have addressed challenges to hotel booking websites, but have not squarely addressed whether an
actual intention to use the website to book a room, or at least to make an "informed choice"
about whether to book a room, at a defendant's property is necessary for standing. *See, e.g.*,
*Harty v. Nyack Motor Hotel Inc.*, No. 19-cv-1322, 2020 WL 1140783, at *3-5, 2020 U.S. Dist.

LEXIS 40429, at *6-13 (S.D.N.Y. Mar. 9, 2020) (dismissing challenge under § 36.302(e)(1) on

grounds of mootness and failure to state a claim, without addressing standing); *Rizzi v. Hilton*

*Domestic Operating Co.*, No. 18-cv-1127, 2019 WL 5874327, at *3-7, 2019 U.S. Dist. LEXIS

120999, at *8-23 (E.D.N.Y. July 18, 2019) (finding that a visually impaired plaintiff lacked

standing to challenge barriers to access on a hotel's booking website where he failed to allege

details about which of multiple websites he visited, what specific barriers he encountered, how

he was impacted, or which websites he intended to return to in the future); *Juscinska v. Paper*

*Factory Hotel, LLC*, 2019 WL 2343306, at *1, 2019 U.S. Dist. LEXIS 92550, at *2-3 (S.D.N.Y.

June 3, 2019) (finding that the plaintiff had sufficiently alleged a website's violations of §

36.302(e)(1) where she visited the website in order to book a room for a "staycation," but not

addressing whether or not this fact was essential to the plaintiff's standing).

  More recently, however, the Southern District of New York addressed the standing issue

in deciding *Harty v. West Point Realty*, *Inc.*, a case involving allegations virtually identical to

those in Plaintiff's original Complaint. No. 19-cv-8800, 2020 WL 4570595, 2020 U.S. Dist.

LEXIS 141893 (S.D.N.Y. Aug. 7, 2020), *appeal docketed*, No. 20-2672 (2nd Cir. Aug. 11,

2020). The court found that the plaintiff lacked standing because his allegations that he intended

to revisit the defendant's ORS "in the near future" to test it for ADA compliance or to reserve a

room "fail[ed] adequately to allege a real threat of future injury." *Id.* at *4, 2020 U.S. Dist.

LEXIS 141893, at *7-8. The Court reasoned as follows:

> First, plaintiff's claim that he intends to visit the website "in the near future," and thus
> will again be harmed by defendants' alleged failure to comply with 28 C.F.R. §
> 36.302(e)(1), is vague and conclusory. The complaint's allegations, taken as true, suggest
> only that plaintiff intends to return to the online reservation systems to test for statutory
> violations of the ADA vis-à-vis 28 C.F.R. § 36.302(e)(1). This is because plaintiff claims
> in conclusory fashion that he might return to the websites to book lodging, and fails to
> allege factual allegations upon which the Court can reasonably infer plaintiff intends to
> return to the websites to book a room or utilize defendant's services—facts that would

support an inference of a particularized and concrete injury, and real threat of future harm. What remains are plaintiff's allegations that he plans to visit websites, to test those websites for ADA compliance, and that defendant's alleged violations of the ADA's regulatory framework vis-à-vis those websites will cause him injury. As noted above, allegations of "a bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *See Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549. Plaintiff's allegations are just that.

Second, the complaint's allegations do not "show [plaintiff's] plausible intention or desire to return [to the websites] but for the [alleged] barriers to access." *See Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145, 2003 WL 1751785, at *7. Here, plaintiff affirmatively alleges his intent to return to the subject websites—to test for compliance with the ADA—despite alleged barriers to access. In other words, plaintiff intends to revisit the subject websites to test for ADA compliance but fails to set forth any allegations suggesting his ability to do so is somehow impeded by defendant's conduct or failure to comply with the ADA and its accompanying regulations. For this additional reason, plaintiff fails to demonstrate standing to seek injunctive relief.

*Id.*, at *4, 2020 U.S. Dist. LEXIS 141893, at *8-10.[11]

Notably, *Harty* did not directly address whether the plaintiff's alleged injury was analogous to the type of statutorily-recognized injury addressed in *Havens Realty* and its progeny. However, its analysis is consistent with those precedents to the extent it found the plaintiff's claimed injury to be an insufficient bare procedural violation, and required the plaintiff to show a more concrete and particularized harm to demonstrate standing. Indeed, *Havens* and the other precedents Plaintiff relies on all identified specific concrete and particularized harms deriving from the statutory violations alleged. For example, the tester plaintiff in *Havens* suffered a "direct" injury from the "the denial of the tester's own statutory right to truthful housing information caused by misrepresentations to the tester." *Havens*, 455 U.S. at 375. The

---

[11] After Defendant filed a Notice of Supplemental Authority referring this Court to *Harty v. West Point Realty*, (Dkt. No. 30), Plaintiff filed a response arguing that the *Harty* decision was erroneous. (Dkt. No. 31). Plaintiff argues that the *Harty* Court erred in refusing to consider a supplemental declaration similar to the one that that Plaintiff attempted to submit here prior to her motion to amend. (*Id.* at 1-2). That argument is not relevant, since unlike the plaintiff in *Harty*, Plaintiff has sought to amend her complaint to add the relevant allegations originally included in her declaration. The remainder of Plaintiff's response largely repeats arguments from her briefing and motion to amend, which are addressed herein. (*Id.* at 2-4).

injury experienced by an ADA tester plaintiff who encounters a discriminatory barrier to access at a *physical* location—regardless of her motivation for visiting the premises—is "concrete" because the barrier directly bars her from "full and equal" enjoyment of the facilities on equal footing with nondisabled individuals, and is "particularized" because it affects her in a unique, individualized way that is not experienced by other disabled individuals who may be aware of and offended by the premises' violations, but never travel to or try to access the premises. *Houston*, 733 F.3d at 1332-33; *Colorado Cross Disability Coalition*, 765 F.3d at 1211-12.

By contrast, an ADA tester who encounters a hotel ORS that fails to comply with § 36.302(e)(1) certainly may suffer the type of "dignitary" and "informational" injuries Plaintiff complains of here; however, if the tester has no actual desire to *use* the ORS for any purpose, and the information required by § 36.302(e)(1) has no actual specific relevance to the tester beyond her generalized desire to find and redress ADA violations, those injuries are no more concrete or particularized than the injuries suffered by *any* disabled individual who happens to stumble across a noncompliant website while surfing the internet from the comfort of their home. *See, e.g., Griffin*, 912 F.3d at 653-57 (explaining that "dignitary" and "informational" injuries deriving from a website's ADA violations are not "concrete" or "particularized" in the absence of plausible allegations that the plaintiff has some use for the website's services and information); *see also, e.g.*, *Laufer v. Arpan, LLC*, No. 19-cv-00200, Dkt. No. 45, at 12-14 (N.D. Fla. Sept. 25, 2020) (distinguishing *Havens* from an ADA tester case involving § 36.302(e)(1), including on the grounds that the tester plaintiff in *Havens* "was directly lied to and discriminated against," whereas the ADA plaintiff "faced no particularized harm" since she "had access to the same information as everyone else"); *Hernandez v. Caesars License Co., LLC*, No. 19-cv-06090, 2019 WL 4894501, at *3-4 & n.3, 2019 U.S. Dist. LEXIS 172456, at *5-11 & n.3

(D. N.J. Oct. 4, 2019) (noting that *Havens* and *Houston* "do not stand for the proposition that the plaintiff's motivations . . . are irrelevant to the injury-in-fact inquiry," but rather reflect "instances in which plaintiffs identified harm that did not depend on their motivations").

Unlike physical barrier cases—in which a tester must actually travel to and attempt to access the defendant's property, and allege a genuine intent to do so in the future, in order to allege standing—a rule allowing pure testers to sue websites for ADA violations "admits of no limiting principle," as it "would allow any aggrieved person to challenge any allegedly deficient website belonging to anyone in the country," entirely eviscerating the limitations on standing imposed by Article III. *Griffin*, 912 F.3d at 657; *see also Kennedy v. Floridian Hotel, Inc.*, No. 18-cv-20839, 2018 WL 10601977, at *11, 2018 U.S. Dist. LEXIS 207984, at *33-34 (S.D. Fla. Dec. 7, 2018) ("[T]his Court will not permit the fact that a website is easily and instantly accessible to swallow whole the Article III requirement that . . . a plaintiff demonstrate . . . a 'real and immediate' threat of future harm. To hold otherwise would be to rubber-stamp standing for injunctive relief in every claim against a non-compliant website in which the plaintiff alleges a vague intention to return to the website."). While not from this Circuit,[12] *Hernandez*, a District

---

[12] Both parties cite a significant number of out-of-circuit District Court decisions addressing standing in the context of § 36.302(e)(1), some involving Plaintiff herself. While the Court has reviewed and considered this case law, the Court notes that these decisions are only persuasive authority and are not binding on this Court. For purposes of this decision, it is sufficient to note that the case law reflects widespread disagreement among the District Courts about the circumstances under which an ADA tester has standing to bring suit under § 36.302(e)(1). *Compare, e.g.*, *Kennedy v. Nisha, Inc.*, No. 20-cv-00367, 2020 WL 5569509, at *3-4, 2020 U.S. Dist. LEXIS 170829, at *6-9 (M.D. Fla. Sept. 17, 2020) (observing disagreement among courts, but concluding that "the weight of the law, as it currently exists, supports Plaintiff's argument as to standing"); *Parks v. Richard*, No. 20-cv-227, 2020 WL 2523541, at *2-3, 2020 U.S. Dist. LEXIS 86790, at *4-8 (M.D. Fla. May 18, 2020) (finding that, for purposes of alleging future injury, a tester plaintiff's intent to revisit the defendant's *website*, not his intent to visit the defendant's *physical property*, is the relevant question, and allegations showing a "definite plan" to recheck the website for compliance "in six months and again in one year" were sufficient); *Poschmann v. Fountain TN, LLC*, No. 19-cv-359, 2019 WL 4540438, at *2, 2019 U.S. Dist. LEXIS 159417, at *5-6 (M.D. Fla. Sept. 19, 2019) (finding that, because "[p]laintiff's ADA claim is based upon [defendant's] *website* failing to identify the accessible features of the motel and its rooms . . . the relevant 'future injury' inquiry relates to the motel's website and reservation system, rather than the motel's physical property," and that the plaintiff's allegations of intent to return to the website as a tester were "sufficient to create an inference plaintiff will suffer injury in the future"); *with, e.g.*, *Arpan*, Dkt. No. 45, at 5-14 (relying on *Griffin* and *Spokeo* to find that plaintiff failed to allege a concrete and particularized injury, or a likelihood of future injury, where she has "shown only that the website omitted information that would be useless to

of New Jersey case, contains the following discussion that further elucidates the distinction

between the "concrete and particularized" injuries recognized in *Houston* and *Havens* and the

injuries tester plaintiffs suffer when they encounter violations of § 36.302(e)(1):

> In *Houston*, the plaintiff visited the defendant's supermarket and encountered
> architectural barriers. During his visit, he experienced the supermarket differently from
> how a tester without disabilities would have experienced it, in a detrimental way.
> Similarly, in *Havens Realty* the African American tester received misinformation about
> the availability of apartments while the white testers received correct information. That
> is, in both cases the plaintiffs actually experienced differential treatment based on a
> characteristic protected by statute. The same is not true in this case. A tester without
> disabilities would have encountered the same difficulty in assessing the accessible
> features of Harrah's. Without an allegation that he was actually considering staying in
> Harrah's or that his experience accessing information on the Website was detrimentally
> different due to his disability, Plaintiff cannot demonstrate concrete injury.

*Hernandez*, 2019 WL 4894501, at *4, 2019 U.S. Dist. LEXIS 172456, at *10-11.[13]

The Court agrees with the approach taken by *Harty, Hernandez* and similar cases. This

approach is most consistent with the Second Circuit case law on tester standing generally, as well

as the District Court case law in this Circuit and the Circuit-level case law in other Circuits

---

her" because she "has announced that she has no plans" to visit the defendant's physical property); *Laufer v. Mann Hospitality, LLC*, No. 20-cv-00620, 2020 WL 6018945, at *3-5, 2020 U.S. Dist. LEXIS 191630, at *6-11 (W.D. Tx. Sept. 30, 2020) (finding the plaintiff's arguments that "being a customer or client is not required to allege an ADA violation" and "that the Supreme Court has held, generally, that it is possible to sue over informational violations created by statute" "do not overcome decades of federal law requiring a concrete and particularized injury" and threat of future injury, and that the plaintiff had not met these requirements where she "has not provided any evidence suggesting future plans to visit" the area near the defendant's hotel or "suggesting she visits [the area] frequently"); *Hernandez*, 2019 WL 4894501, at *2-4, 2019 U.S. Dist. LEXIS 172456, at *5-11 (finding website's non-disclosure of accessibility information "could conceivably harm a person with disabilities, provided that person was actually looking for a place to stay in Atlantic City," but the plaintiff's tester status alone was insufficient to allege past or future injury). The only clear, consistent lesson that can be derived from this case law appears to be that, in the words of one court, "[g]uidance is sorely needed in this arena." *Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1272 (M.D. Fla. 2019).

[13] Plaintiff's attempts to distinguish the injury alleged in *Spokeo* from the injury alleged here misses the mark. (Dkt. No. 17, at 17-21). While the Court agrees with Plaintiff that *Havens* and its progeny remain binding law, and that the injury alleged in *Spokeo* is not factually analogous to the injury alleged here, Plaintiff's arguments do not refute the key lesson from these cases—that a statutory injury must be tied to a "concrete" and "particularized" harm in order to create Article III standing. Plaintiff's statutory arguments, including that the relevant ADA provisions and regulations contain no "client or customer" requirement, are similarly unavailing—while the Court agrees that the statutory and regulatory language contains express limitation on testers' standing to sue, the limitations on standing discussed herein come not from the ADA itself, but from the distinct standing requirements imposed by Article III.

addressing ADA violations in the context of websites. All of this case law suggests that, to allege an injury-in-fact for standing purposes, a plaintiff challenging a website's ADA violations must demonstrate that she had a purpose for using the website that the complained-of ADA violations frustrated, such that any injury is concrete and particularized to the plaintiff. *See*, *e.g.*, *Griffin*, 912 F.3d at 654-55. And to establish a real and immediate threat of repeated injury, a plaintiff must demonstrate that her intent to return to the website to book a room, or at least to obtain information that would allow her to decide whether to book a room, is plausible. *Id.* at 655-56.[14]

### 6. Sufficiency of Standing Allegations in Plaintiff's Amended Complaint

Turning to the sufficiency of Plaintiff's allegations, clearly her original complaint did not meet the foregoing standards. As to injury-in-fact, her original complaint made clear that she visited Defendant's ORS in her capacity as a tester "for the purpose of reviewing and assessing the accessible features at the Property and ascertain[ing] whether it meets the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs," and contained no allegations whatsoever suggest that she intended to actually book a room at Defendant's property or was seeking information that would allow her to decide whether to book a room. (Dkt. No. 1, at ¶¶ 2, 11). And her only allegation suggesting likelihood of future injury read: "In the near future, Plaintiff intends to revisit Defendant's ORS in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property."

---

[14] The Court emphasizes that nothing in its analysis should be viewed as a criticism of testers with a genuine, laudable desire to seek out and remedy discrimination. The Court's role in this matter is not to cast positive or negative judgment on Plaintiff's motivations, but rather, is strictly limited to ensuring that, as a legal matter, Plaintiff satisfies Article III's standing requirements. As another court addressing Plaintiff's claims aptly stated: "None of this is to say that Laufer's goal was improper or that her concerns were invalid. Indeed, courts must be 'sensitive to the formidable challenges [disabilities] impose on the navigation of everyday life.' *Griffin*, 912 F.3d at 656. But the limitations of federal courts' authority apply to this case as any other." *Arpan,* Dkt. No. 45, at 15 n. 7.

(*Id.* ¶ 12). This is virtually identical to the "vague" and "conclusory" allegation that the *Harty v. West Point* court held could not create a reasonable inference that the plaintiff "intends to return to the websites to book a room or utilize defendant's services" without more concrete facts regarding her plans to visit the area. *Harty,* 2020 WL 4570595, at *4, 2020 U.S. Dist. LEXIS 141893, at *8-9. Furthermore, even assuming *arguendo* that allegations of Plaintiff's intent to return to Defendant's ORS to test it for ADA compliance, rather than to book a room, were sufficient to create an inference of future injury, Plaintiff's conclusory allegation that she will return to the website to test it "in the near future," without more factual context, is the type of vague "some day" allegation that the Supreme Court has held is insufficient to establish standing. *Lujan*, 504 U.S. at 564; *cf. Floridian Hotel*, 2018 WL 10601977, at *9-10, 2018 U.S. Dist. LEXIS 207984, at *22-32 (denying a plaintiff's motion for summary judgment, and dismissing her claim for lack of standing, where she alleged that she would visit the defendant's website in the future as a tester but had "no record of the [many] websites she has sued" and "no system or routine to revisit" those websites).

However, the new allegations in Plaintiff's Amended Complaint resolve some of these deficiencies. First of all, in contrast to her original complaint, her Amended Complaint specifically describes her system for rechecking the websites of the various hotels she has sued. Plaintiff alleges that she "maintains a list of every hotel she has sued" and "records the dates she visits their reservations systems," that she "visited the websites for Defendant's hotel multiple times prior to filing the instant lawsuit, including one time on November 21, 2019," that after the filing of a complaint she "marks a date for the near future to revisit the hotel's system," that "[o]nce it is established when the hotel's system is required to become compliant, whether by settlement agreement or court order, [Plaintiff] records the date," and that she "then revisits the

29

hotel's system when that date arrives." (Dkt. No. 26-2, at ¶ 6). Drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, these allegations create an inference that Plaintiff has a "definite plan" to return to Defendant's ORS at least to check it for compliance. *Parks*, 2020 WL 2523541, at *3, 2020 U.S. Dist. LEXIS 86790, at *7.

Of course, under the principles discussed in this decision, Plaintiff's intent to return to the ORS as a "tester" alone would not give Plaintiff standing. However, the Amended Complaint also contains allegations giving rise to a reasonable inference that Plaintiff intends to visit the area near Defendant's property in the future and, as such, needs the information required by 28 C.F.R. § 36.302(e)(1) to make an "informed choice" as to whether or not to book a room there. *Camancho*, 2019 WL 6528974, at *11, 2019 U.S. Dist. LEXIS 209202, at *31. She alleges that she "has family in New York and travels to the State to visit them frequently," that she "has traveled extensively throughout the State" in the past, and that she plans to do so again in the future "as soon as the Covid crisis is over." (Dkt. No. 26-2, at ¶ 7). She also alleges a desire to visit specific attractions in the vicinity of Defendant's hotel, specifically, the Skaneateles Lake, Skaneateles Village, and the Montezuma National Wildlife Refuge. (*Id.*). While Plaintiff does not provide an exact timeframe for when she intends to return to New York, it is plausible to infer that this ambiguity is consistent with the uncertainty surrounding when the Covid crisis will end and interstate travel may safely resume.

Plaintiff does not specify exactly which family members live in New York, where they live in relation to Auburn (where Defendant's hotel is located), or how often she has traveled to Auburn as opposed to elsewhere in the state. Despite the omission of these details, at the pleading stage, the factual context Plaintiff has provided is sufficient to infer that she has concrete plans to visit New York when it becomes safe to do so and that, when she does, she has

a particular interest in visiting attractions near Defendant's hotel. *Compare, e.g. Simon Prop. Grp.,* 428 F. App'x at 71-72 (finding that the plaintiff's allegations that he visits New York frequently to visit family and attend gun shows supported a plausible inference that he would return to a mall in Nanuet, New York); *Pincus*, 581 F. App'x at 89-90 (rejecting District Court's finding that the "plaintiff's failure to plead the frequency with which she visited Tampa's Amtrak station, the proximity of her home to the station, or reasons for future travel foreclosed any reasonable inference that Pincus would frequent the station if the [ADA] violation were remedied," and finding the plaintiff's allegations of future injury were plausible given her "prior use of Amtrak, her residence in a city with an Amtrak station, and the distinct and widespread nature of Amtrak's services in providing access to intercity travel"), *with, e.g.*, *Greenwich Hosp. Grp.*, 536 F. App'x at 155 (finding plaintiff lacked standing where he had only stayed overnight in Stamford once in the past despite "dozens of trips" to visit his family in nearby Nyack, New York over the last thirty years, and he had not alleged "any concrete plan to stay overnight in Stamford in the future"); *Bernstein v. City of New York*, 621 F. App'x 56, 58-59 (2d Cir. 2015) (finding the plaintiff's allegations of visits to New York "approximately 30 times per year, for over 10 years" and "hundreds of visits to Central Park" were insufficient to show future injury where his complaint "does not provide *any* information regarding [the plaintiff's] intent to return to the Park in the future" (emphasis added)).

Taking the foregoing facts as true, and drawing all reasonable inferences in Plaintiff's favor—as the Court must at this stage—Plaintiff's allegations give rise to a reasonable inference that she intends to visit Defendant's ORS in the future, both to test the ORS for ADA compliance and to actually evaluate the hotel's accessibility features and determine whether to book a room for a future visit to the area. However, the Amended Complaint's allegations do *not* support a

reasonable inference that Plaintiff suffered a *past* concrete, particularized injury in fact. Plaintiff's only allegations with respect to her intent to visit New York are forward-looking; that is, they assert that Plaintiff presently intends to visit New York *in the future*. But she does not allege that her visits to Defendant's ORS *prior to* filing her Complaint were motivated (in whole or in part) by her intent to travel to New York. There are no allegations from which the Court could reasonably infer that she originally went to the ORS with the intent to book a room, or at least to obtain information that would allow her to decide whether to book a room. Indeed, her allegations as to her *past* injury-in-fact are unchanged from those in her original Complaint, which relied solely on her status as a "tester" to allege standing and nowhere suggested that she was motivated by a desire to actually visit New York. (*Compare* Dkt. No. 1, at ¶¶ 2, 11, 14-15, *with* Dkt. No. 26-2, at ¶¶ 2, 13, 16-17). Given that, it would be unreasonable to infer from her new allegations regarding her present desire to visit New York *in the future* that her visits to the ORS *prior to* filing her original complaint were motivated by anything other than her tester status. *Cf. Multistack LLC v. Arctichill Inc.*, No. 05-cv-3865, 2006 WL 510506, at *4 n.7, 2006 U.S. Dist. LEXIS 10242, at *14 n. 7 (S.D.N.Y. Mar. 1, 2006) (observing that a plaintiff's standing must be "assessed at the time of the original complaint, even if the complaint is later amended" (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 & n. 3 (Fed. Cir. 2005))).

Therefore, the Court finds that Plaintiff's proposed amendments to her Complaint would be futile, and denies her leave to amend on that basis. However, the Court recognizes the wide divergence among District Courts and overall lack of clarity regarding the law in this area, and the possibility that Plaintiff may be able to cure the standing issues the Court has identified

through further amendment. Therefore, the Court will permit Plaintiff to file a further Amended
Complaint to address these issues, should she wish to do so.

### 7.    Relevance of Plaintiff's Other Lawsuits

Defendant argues that the Court should disregard Plaintiff's allegations regarding her
intent to visit the vicinity of Defendant's hotel because Plaintiff has made virtually identical
allegations in numerous other cases pending both in New York and other states, rendering her
allegations that she actually intends to visit Defendant's property implausible. (Dkt. No. 32, at 5-
9). More generally, Defendant points to the fact that Plaintiff has filed over 500 lawsuits in at
least 15 states within the last year, including more than 140 lawsuits in New York District Courts
alone, and argues that in light of this extensive litigation history, her new allegations averring an
intent to visit Defendant's property are most properly viewed as a "*post-hoc* attempt to avoid
dismissal." (*Id.*).[15]

"Courts must tread carefully before construing a Disability Act plaintiff's history of
litigation against him," as "[f]or the [Disabilities Act] to yield its promise of equal access for the
disabled, it may be necessary and desirable for committed individuals to bring serial litigation
advancing the time when public accommodations will be compliant with" the ADA. *Antoninetti
v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (alterations in original)
(citations omitted). Nonetheless, some courts have relied in part on plaintiffs' serial litigation

---

[15] Defendants argue that Plaintiff's litigation history raises concerns, which some courts have noted, about the
"potential abuse of the ADA" and the "explosion of private ADA-related litigation that is primarily driven by the
ADA's attorneys' fees provision." (Dkt. No. 11, at 4 (citations omitted)); *see also Access 4 All,* 2006 U.S. Dist.
LEXIS 96742 at *34-35; *see also Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d at 1214-15. Plaintiff
counters that the purpose of these fee-shifting provisions is to "encourage 'private attorneys general' to actively
enforce the statutes [*sic*] provisions," that the threat of damages and attorneys' fees is the "driving force that
facilitates voluntary compliance with the ADA," and that "[i]t is Defendant, not Plaintiff, who is to blame for the
instant lawsuit, because its facilities are badly non-compliant." (Dkt. No. 17, at 7 (citations omitted)). The Court
does not weigh into this debate about the policy goals embedded in the ADA and the consequences of the structure
Congress chose. The Court looks to Plaintiff's litigation history only to the extent that history informs the question
of whether, as a legal matter, her claims meet the requirements of Article III standing.

history in finding that they lacked a genuine intention to revisit a particular defendant's website or physical property; however, this is most common and appropriate at the summary judgment stage or trial, where a plaintiff can no longer rely on judicial deference to the allegations in her complaint, and the Court or factfinder may examine evidence beyond Plaintiff's complaint to evaluate whether she has a genuine intent to return. *See, e.g. Floridian Hotel, Inc.*, 2018 WL 10601977, at *9-10, 2018 U.S. Dist. LEXIS 207984, at *22-32 (finding, at summary judgment stage, that plaintiff had no standing where she alleged that she would visit the defendant's website in the future as a tester but had "no record of the [many] websites she has sued" and "no system or routine to revisit" those websites); *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, at 1211-20 (S.D. Cal. Feb. 5, 2007) (finding, following a bench trial, that plaintiff's testimony that "once a lawsuit is over he puts the details behind him and focuses on details of new suits" and that he could not remember some establishments he sued in the past, in combination with other factors suggesting he was unlikely to return to the defendant's gas station, demonstrated lack of future injury). Furthermore, while it is perhaps implausible that Plaintiff intends to actually book a room at every single hotel she has sued, it may not be facially implausible that she intends to at least visit each of their websites in order to make an informed choice about whether to visit in person, which is the injury she alleges here. *Compare, e.g.*, *Access 4 All*, 2006 U.S. Dist. LEXIS 96742, at *33[16] ("The more hotels sued by an individual ADA plaintiff, the less likely it is that the plaintiff will be able to demonstrate a plausible intention to return to each of those hotels in the 'imminent' future to enjoy its facilities"), *with*, *e.g.*, *Camancho*, 2019 WL 6528974, at *11, 2019 U.S. Dist. LEXIS 209202, at *31 ("Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed

---

[16] No parallel Westlaw citation available.

complaints . . . Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.").

At the same time, the Court cannot ignore the large number of nearly identical lawsuits Plaintiff has filed in numerous jurisdictions, nor the fact that, in a number of actions pending before this Court alone, Plaintiff has sought to amend her original Complaint with "cut-and-paste" allegations that are virtually identical to those she seeks to add here, with the only difference being the attractions she names. *See Laufer v. Shree Hari Holdings, LLC*, No. 19-cv-1559, Dkt. No. 29-2, at ¶ 7; *Laufer v. Jegg Realty Norwich, LLC*, No. 19-cv-1581, Dkt. No. 28, at ¶ 7; *Laufer v. DND Cortland Real Estate, LLC*, No. 19-cv-1586, Dkt. No. 32-2, at ¶ 7; *Laufer v. Dhani, LLC*, No. 20-cv-376, Dkt. No. 22-1, at ¶ 7; *Laufer v. Nirag Inc.*, No. 20-cv-384, Dkt. No. 20-1, at ¶ 7. Because this Court has now determined that standing in this context requires a concrete and particularized past and future injury beyond a mere visit to each defendant's ORS as a "tester," there are serious questions as to whether Plaintiff can genuinely and credibly claim such an injury with respect to the hundreds of defendants she has sued. The facts that Plaintiff's original Complaint relied solely on her tester status, that her allegations regarding her past motivations for visiting Defendant's website are unchanged from that Complaint, and that she has now sought to cure her standing problems through cut-and-paste, somewhat vague allegations regarding her future plans to visit New York amplify these concerns.[17]

At this early stage, the Court must accept Plaintiff's factual allegations as true and construe all reasonable inferences in her favor, rather than make adverse assumptions about those

---

[17] For example, the fact that Plaintiff cites her family in New York as a reason to visit attractions located all over the state many miles apart from each other, without describing where exactly her family lives in relation to any of the

allegations' credibility based solely on her conduct in other litigation. However, the Court is also sensitive to the administrative inefficiency and burden on both courts and defendants that results when the relatively deferential standard at the pleading stage allows a plaintiff's complaint to survive dismissal, only for the plaintiff's claims to be dismissed for lack of standing at the summary judgment stage after significant time, resources and money has been expended on discovery. For perhaps this reason, the Second Circuit has made clear that where the sincerity of a serial ADA Plaintiff's standing allegations is in question, "this doubt should be resolved by the court before proceeding further," and that "[i]n deciding this question, the court may conduct relevant discovery and fact finding (including findings as to [the Plaintiff's] credibility)." *Simon Prop. Group*, 428 F. App'x at 72.[18]

In light of the standing problems the Court has identified with Plaintiff's Amended Complaint, the appropriate course of action at this time is to deny leave to amend, while giving Plaintiff an opportunity to cure those issues. Assuming Plaintiff does so, however, the Court must then consider the most efficient and appropriate way to proceed with this case, as well as Plaintiff's numerous other nearly identical cases pending before it, particularly in light of the Court's questions regarding the veracity of Plaintiff's standing allegations. In this regard, it would be helpful to hear the parties' views on whether some type of limited discovery or an evidentiary hearing to test the credibility of Plaintiff's standing allegations would be appropriate

---

attractions she names, certainly raises questions as to whether Plaintiff's new allegations evince a genuine desire to visit Auburn (or any of the particular locations at issue in her other lawsuits), as distinct from New York State generally.

[18] Plaintiff cites *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013), for the proposition that, where "the jurisdictional dispute is interwoven with the underlying merits" of the dispute, the District Court may not make a determination as to Plaintiff's credibility at this stage. (Dkt. No. 7, at 9). However, *Dorchester* makes clear that the District Court has "considerable procedural leeway" when evaluating its own jurisdiction, and specifically affirms that even in a case where jurisdictional facts overlap with facts going to the merits, a Court may "deem it appropriate to make a preliminary finding on jurisdictional facts, subject to revision later in the proceedings or at trial." 722 F.3d at 86-87 (citations omitted).

and, if so, what form that discovery or hearing should take. It would also be helpful to hear the parties' views as to whether, given the significant overlap in the legal and factual issues involved in Plaintiff's lawsuits, it would be appropriate and efficient to consolidate those cases at least for purposes of such jurisdictional discovery.

Therefore, to the extent Plaintiff chooses to further amend her Complaint, the Court invites (but does not require) her to also submit a letter brief explaining her position as to the questions raised above regarding the Court's next steps, assuming any further amended Complaint survives dismissal. To the extent Defendant wishes to submit a brief opposing Plaintiff's further amendments or presenting its own position about how the Court should proceed, Defendant is free to do so as well.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to amend her complaint (Dkt. No. 26) is **DENIED without prejudice**; and it is further

**ORDERED** that Defendant's letter motion to disregard Plaintiff's supplemental declaration (Dkt. No. 19) is **DENIED as moot**; and it is further

**ORDERED** that to the extent Plaintiff wishes to file a motion seeking to further amend her Complaint to address the standing deficiencies identified herein, she may do so by no later than 30 days from the date of this order; and it is further

**ORDERED** that, should Plaintiff do so, she may, but is not required to, submit a letter brief no later than 30 days from the date of this order explaining her position on the most appropriate path forward assuming her further amended Complaint survives dismissal, particularly with respect to the questions raised in Section IV.B.7 of this decision; and it is further

**ORDERED** that, within the time permitted by the Federal and Local Rules for an opposition to Plaintiff's motion to further amend, Defendant may submit such an opposition and/or a letter brief explaining its own views on the most appropriate path forward assuming Plaintiff's further amended Complaint survives dismissal.

**IT IS SO ORDERED.**

Dated: November 18, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

## **EXHIBIT B**

**Docket Numbers**

| | |
|---|---|
| 1:19-cv-01501 | 3:20-cv-00281 |
| 1:20-cv-00845 | 5:19-cv-01585 |
| 1:20-cv-01075 | 5:19-cv-01586 |
| 3:19-cv-01509 | 5:20-cv-00273 |
| 3:19-cv-01557 | 5:20-cv-00379 |
| 3:19-cv-01559 | 6:19-cv-01432 |
| 3:19-cv-01564 | 8:20-cv-00350 |
| 3:19-cv-01581 | 8:20-cv-00357 |
| 3:20-cv00378 | 820-cv-00376 |
| 3:20-cv-00383 | 8:20-cv-00384 |